# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

DAVID E. DURHAM,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

      Defendant.

Case No. 2:17-cv-00385-JVB-JEM

**OPINION AND ORDER**

    Plaintiff David E. Durham seeks judicial review of the Social Security Commissioner's decision denying him disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A. Overview of the Case**

    Plaintiff alleges that he became disabled November 1, 2012. (R. at 10.) Plaintiff's date last insured ("DLI") was December 31, 2013. (R. at 12.) Plaintiff worked as a shipping and receiving clerk prior to his plant closing in 2012. (R. at 10, 40.) After a video hearing before an Administrative Law Judge ("ALJ) in 2016, the ALJ found that Plaintiff suffered from the severe impairments of late effects of a remote myocardial infarction and ventricular tachycardia status post an implantable cardioverter defibrillator (ICD) placement, cervical degenerative disc disease, and right glenohumeral degenerative joint disease. (R. at 12.) The ALJ did, however, find that a number of jobs existed which Plaintiff could perform. (R. at 20.) Therefore, the ALJ found him to be not disabled at any time from November 1, 2012, the alleged onset date, through

December 31, 2013, the date last insured, and denied him benefits. (R. at 20.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

**B. Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

**C. Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D. Analysis**

Plaintiff contends that the ALJ committed four reversible errors: that the ALJ played doctor in interpreting medical evidence; that the ALJ improperly evaluated Plaintiff's subjective symptoms; the ALJ erred in failing to include manipulative limitations in Plaintiff's RFC; and the ALJ failed to properly weigh a treating physician's opinion.

**(1) Playing Doctor**

Plaintiff argues that the ALJ played doctor in a number of ways. The Seventh Circuit has cautioned ALJs not to succumb to the temptation to play doctor. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2012). The ALJs are said to have impermissibly played doctor when they either reject a doctor's medical conclusion without other evidence, or when they draw medical conclusions themselves about a claimant without relying on medical evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir. 2001).

Plaintiff contends that the ALJ erred in failing to give weight to the state agency physician opinions. Plaintiff cites to *Suide v. Astrue*, 371 Fed. Appx 684, 690 (7th Cir. 2010), arguing that the ALJ created an "evidentiary deficit" after rejecting the treating physician opinions and failing to give weight to the state agency physician opinions. Plaintiff contends the ALJ played doctor in crafting the RFC without relying on any medical opinions, similar to *Suide*. However, in *Suide*, the state agency physician failed to issue an RFC in the opinion, leaving nothing for the ALJ to rely on. This is not the case here. Here, the state agency doctors gave an RFC opinion that was identical to the ALJ's physical RFC determination. Any error in failing to explicitly assign weight to a medical opinion in this case is harmless, as the ALJ thoroughly addressed the state agency doctor's findings by repeating them in his RFC. *See Lloyd v.*

*Berryhill*, 682 F. App'x 491, 497 (7th Cir. 2017) (Although the ALJ erred in not assigning weight to a consultative examiner's assessment, "this error was harmless because the ALJ thoroughly addressed [the examiner's] overall findings, which were unfavorable to Lloyd."). Moreover, the ALJ discussed the same evidence that the state agency physicians used to come to their RFC determinations, and ultimately came to the same conclusion. (R. at 14–19, 79.) Therefore, the ALJ's error in assigning weight to the state agency opinions is harmless, as the ALJ has relied on the state agency opinions in crafting the RFC.

Next, Plaintiff argues that the ALJ played doctor with regards to Plaintiff's subjective symptoms, specifically his grip strength. The ALJ focused on Plaintiff's ability to generate sixty pounds of grip force with his right hand to discredit Plaintiff's claim of not being able to use his right arm. (R. at 17.) Plaintiff asserted that he struggled holding a pen, and that physical therapy worsened his pain, yet the ALJ stated that Plaintiff's grip strength disproved these subjective allegations. (R. at 17.) The ALJ failed to recognize that that sixty pounds of grip strength is greatly reduced grip strength. Average grip strength for a man of Claimant's age is 113.6 pounds. *See, e.g.*, Virgil Mathiowetz et al., "Grip and Pinch Strength: Normative Data for Adults," 66 *Archives of Physical Medicine and Rehabilitation*, 69, 71 (1985), www.fcesoftware.com/images/5_Grip_and_Pinch_Norms.pdf (visited March 14, 2019). Men over the age of 75 still have an average grip strength of 65.7 pounds in their right hand, which is more than Plaintiff's recorded grip strength. *Id.* Plaintiff's grip strength was almost three standard deviations below the average grip strength for his age. *Id.* The ALJ improperly played doctor by assuming that a grip strength of sixty pounds was inconsistent with Plaintiff's complaints. This error is even more problematic, as the ALJ used Plaintiff's grip strength to discredit Dr. Khankari's opinion that Plaintiff was limited in grasping and fine manipulative

actions. (R. at 18.) The ALJ's incorrect understanding of grip strength has affected both the subjective symptom analysis, the RFC, and the treating physician analysis. This error necessitates remand. The ALJ has failed to build a logical bridge from the evidence to her ultimate conclusions.

**(2) Subjective Symptoms**

The ALJ's subjective symptoms analysis, as discussed above, is flawed due to the ALJ playing doctor and basing his conclusion on an incorrect interpretation of Plaintiff's grip strength. However, Plaintiff asserts the ALJ made other errors with regards to his subjective symptoms analysis. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). In addressing Plaintiff's subjective symptoms, the ALJ must consider all of the evidence in the record. 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ is directed to consider the following factors:

(i) daily activities;

(ii) the location, duration, frequency, and intensity of the symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage, effectiveness, and side effects of any medication taken;

(v) other treatment received for relief of symptoms;

(vi) any measures used to alleviate symptoms; and

(vii) other factors concerning limitations and restrictions due to symptoms

20 C.F.R. §§ 404.1529(c)(3)(i)–(vii). Plaintiff contends that the ALJ mischaracterized Plaintiff's daily activities.

The ALJ here dismissed Plaintiff's subjective symptoms, stating they were inconsistent with the record. The ALJ found that despite Plaintiff's complaints of pain, Plaintiff could shovel snow, could climb stairs, and his exams were regularly unremarkable. (R. at 16.) Plaintiff alleges that the ALJ's determination that Plaintiff could shovel snow and climb stairs was mischaracterized. On December 17, 2012, Plaintiff did report to his doctor that he could shovel snow and "climbs stairs all day long." (R. at 477.) However, Plaintiff only reported this at his first appointment with this doctor, where he also complained about arm pain and tingling on his right side that had been occurring for one month. (*Id.*) Moreover, Plaintiff noted that it had not yet snowed that winter, and therefore Plaintiff's reference to being able to shovel snow only applied for the previous winter. (R. at 245.) Although Plaintiff could shovel snow perhaps as late as spring of 2012, by December he stated that he had been suffering from arm pain for a month, and there was no evidence that he could continue to shovel snow after his alleged onset date. The ALJ also fails to acknowledge Plaintiff's quick decline during the relevant period. By August of 2013, Plaintiff told his doctor that he could not play guitar and could not lift any weight. (R. at 463.) In November of 2013, Plaintiff reported that therapy made his pain worse, that he could not hold a pen, and that he could not use his arm for daily chores. (*Id.*) By February of 2014, although after his date last insured, Plaintiff reported that he was unable to use his right arm at all, and he no longer was capable of shoveling snow. (R. at 463.) The ALJ mischaracterized Plaintiff's ability to shovel snow and improperly used this daily activity to discount Plaintiff's subjective complaints of right arm pain.

The ALJ also stated that Plaintiff's ability to "climb[] stairs all day long" was "erosive" of Plaintiff's claims of right upper extremity pain. (R. at 16.) However, Plaintiff's ability to climb stairs in 2012 indicates nothing regarding Plaintiff's right arm pain. The ALJ failed to

build a logical bridge explaining why an ability to climb stairs would discredit Plaintiff's subjective complaints of right arm pain. The ALJ improperly relied on this daily activity to discount Plaintiff's report of arm pain.

**(3) Treating Physician**

Plaintiff argues that the ALJ erred in weighing the opinion of Dr. Andress and nurse practitioner Penegor. Nurse practitioner ("NP") Penegor completed a cardiology opinion on June 27, 2016, which Dr. Andress then endorsed. (R. at 679–682.) In the opinion, NP Penegor noted that Dr. Andress had been treating Plaintiff every four to six months since 2003. (R. at 679.) NP Penegor opined that Plaintiff was incapable of even "low stress" work, and that Plaintiff was unable to work due to his defibrillator and depression. (R. at 680.) The ALJ found this opinion unconvincing. (R. at 18.) The ALJ stated that the opinion was inconsistent with Plaintiff's records, which showed that Plaintiff's defibrillator had not fired, Plaintiff had good exercise tolerance, and that Plaintiff did not report fatigue or orthopnea. (R. at 18.)

A treating physician's opinion is to be given controlling weight because of the length and nature of the relationship unless the ALJ provides good reasons for setting aside that opinion. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). When a treating physician's opinion is not entitled to controlling weight, an ALJ must weigh it using such factors such as "the length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

The ALJ made two errors in analyzing the Penegor/Andress opinion. First, the ALJ used the previously discussed mischaracterized evidence in finding that the Penegor/Andress opinion

7

was unconvincing. The ALJ found that Plaintiff had good exercise tolerance based on the ALJ's mischaracterization of Plaintiff's ability to shovel snow. Moreover, the ALJ failed to acknowledge Plaintiff's long treatment relationship with Dr. Andress. Dr. Andress treated Plaintiff every four to six months, starting in 2003. (R. at 679.) Dr. Andress continued to treat Plaintiff until after his DLI. (R. at 679.) Dr. Andress also ordered Plaintiff's echocardiograms and noted Plaintiff's ejection fraction of 37%. (R. at 679.) Dr. Andress also adjusted Plaintiff's medication to suppress arrhythmias, but noted that the increase in medication may be contributing to Plaintiff's fatigue. (R. at 680.) The ALJ failed to acknowledge Plaintiff's long treatment history with Dr. Andress and the treating relationship between Plaintiff and Dr. Andress.

**(4) Other Issues**

Plaintiff also raises issues regarding the factors in 20 C.F.R. § 404.1529(c) and RFC analysis. These other issues are all effected by the ALJ's mischaracterization of evidence. Plaintiff contends that the ALJ failed to include manipulative limitations in the RFC. The RFC was created using faulty subjective symptom analysis and a misunderstanding of Plaintiff's grip strength. Therefore, the RFC is also flawed. The Court remands this case due to the error regarding the mischaracterization of evidence. On remand, the ALJ will have the opportunity to reexamine the RFC and the subjective symptom analysis.

**(E) Conclusion**

The ALJ erred in mischaracterizing both Plaintiff's grip strength and his daily activities. For these reasons, the court remands the case for further consideration.

SO ORDERED on March 27, 2019.

        s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE